IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JORGE SANCHEZ,                     )
                                   )
              Petitioner,          )        No C 06-3438 VRW (PR)
                                   )
       vs.                         )        ORDER DENYING
                                   )        PETITION FOR A WRIT OF
BEN CURRY, Warden,                 )        HABEAS CORPUS
                                   )
              Respondent.          )
_____  )

         Petitioner, a state prisoner incarcerated at the Correctional Training

Facility in Soledad, California, seeks a writ of habeas corpus under 28 USC §

2254 challenging the governor's reversal of the California Board of Prison Terms'

("BPT") decision to grant him parole.

         Per order filed on September 6, 2006, the court found that petitioner's

claim that the governor's decision finding him not suitable for parole does not

comport with due process appears colorable under § 2254, when liberally

construed, and ordered respondent to show cause why a writ of habeas corpus

should not be granted.  Respondent has filed an answer to the order to show cause

and petitioner has filed a traverse.

I

On January 13, 1990, after a day of drinking alcohol, petitioner and two companions left a bar to drive home.  His companions asked for his car keys, but petitioner refused and started to drive the group home.  After driving city streets at speeds of approximately 40 to 50 miles per hour, petitioner failed to stop for a ref traffic light, swerved through an intersection, and struck two pedestrians as they were lawfully crossing the street.  One died at the scene and the other suffered major injuries.

Petitioner was immediately arrested.  His blood alcohol level was .24 percent.  He had three prior drunk driving convictions and was on probation for one of these at the time of the incident.

As part of a plea agreement, petitioner pleaded guilty to second degree murder in Los Angeles County superior court and, on August 20, 1990, was sentenced to 15 years to life in state prison.

On September 28, 2004, the BPT held a parole suitability hearing and found petitioner suitable for parole.  But on February 8, 2005, the governor reversed the BPT's suitability determination and denied petitioner a parole date.

Petitioner unsuccessfully challenged the governor's decision in the state superior, appellate and supreme courts.  After the Supreme Court of California denied his petition for review on May 17, 2006, the instant federal petition for a writ of habeas corpus followed.

II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 USC § 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction."

White v Lambert, 370 F3d 1002, 1009-10 (9th Cir 2004).  Under AEDPA, this court may entertain a petition for habeas relief on behalf of a California state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 USC § 2254(a).

The writ may not be granted unless the state court's adjudication of any claim on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Id  at § 2254(d).  Under this standard, federal habeas relief will not be granted "simply because [this] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Williams v Taylor, 529 US 362, 411 (2000).

While circuit law may provide persuasive authority in determining whether the state court made an unreasonable application of Supreme Court precedent, the only definitive source of clearly established federal law under 28 USC § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision.  Id at 412; Clark v Murphy, 331 F3d 1062, 1069 (9th Cir 2003).

III

Petitioner seeks federal habeas corpus relief from the governor's February 8, 2005 decision to reverse the parole granted him by the BPT.  Petitioner claims that the governor's decision does not comport with due process because it is not supported by some evidence in the record and is based solely on unchanging factors such as his commitment offense and pre-commitment criminal history.

3

A

Under California law, prisoners serving indeterminate life sentences, like petitioner, become eligible for parole after serving minimum terms of confinement required by statute. In re Dannenberg, 34 Cal 4th 1061, 1069-70 (2005). At that point, California's parole scheme provides that the board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration." Cal Penal Code § 3041(b). Regardless of the length of time served, "a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." Cal Code Regs tit 15, § 2402(a). In making this determination, the board must consider various factors, including the prisoner's social history, past criminal history, and base and other commitment offenses, including behavior before, during and after the crime. See id § 2402(b) – (d). The governor, in considering whether to reverse a grant of parole by the board, must consider the same factors the board is required to consider. See Cal Const art 5, § 8(b); In re Rosenkrantz, 29 Cal 4th 616, 665 (2002).

California's parole scheme "gives rise to a cognizable liberty interest in release on parole which cannot be denied without adequate procedural due process protections." Sass v California Bd of Prison Terms, 461 F3d 1123, 1128 (9th Cir 2006); McQuillion v Duncan, 306 F3d 895, 902 (9th Cir 2002). It matters not that a parole release date has not been set for the inmate because "[t]he liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate." Biggs v Terhune, 334 F3d 910, 914-15 (9th Cir 2003).

Petitioner's due process rights require that "some evidence" support the governor's decision finding him unsuitable for parole. Irons v Carey, 505 F3d 846, 851 (9th Cir 2007) (holding that "some evidence" standard for disciplinary hearings outlined in Superintendent v Hill, 472 US 445, 454-55 (1985), applies to parole decisions in § 2254 habeas petition); Sass, 461 F3d at 1125 (same); Biggs, 334 F3d at 915 (same); McQuillion, 306 F2d at 904 (same). This "some evidence" standard is minimally stringent and ensures that "the record is not so devoid of evidence that the findings of [the governor] were without support or otherwise arbitrary." Hill, 472 US at 457. Determining whether this requirement is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Id at 455-56 (quoted in Sass, 461 F3d at 1128).

**B**

After considering the same factors as the BPT, the governor concluded that petitioner was not suitable for parole because "he would pose an unreasonable risk of danger to society if released from prison at this time." Feb 8, 2005 Governor's Decision at 2 (Resp't Ex E). The governor based this conclusion on his finding that the circumstances and magnitude of the murder are "particularly atrocious given the significance and similarities of [petitioner's] criminal history." Id. The governor explained:

> . . . [A]t the time [petitioner] drove drunk and killed Mr. Ruiz, he was a 31-year-old alcoholic on probation for a previous driving-under-the-influence conviction. And he had also been convicted on two additional occasions when he was 22 years old for driving under the influence. According to the probation officer's report, [petitioner] was placed on probation for each offense, at one point had his driver's license suspended, and was ordered to attend substance-abuse programs. None of these things deterred his murderous conduct. In fact, based on the same officer's report, [petitioner] falsified his Alcoholics Anonymous documents to make it appear as though he attended and completed a particular program, when he actually did not.

> Given this track record, it is unsurprising that, rather than correct his alcohol-related criminality, [petitioner] on the day of the murder chose to again drive a car while intoxicated – the natural consequences of which are dangerous to life – despite his passengers' efforts to prevent him this time from doing so.  Mr. Sanchez demonstrated callous disregard for the safety of everyone on the road that day by driving intoxicated and at speeds considered "too fast" by witness accounts in the probation officer's report.  He failed to stop at a red light, while his passengers yelled at him to do so, and ended the life of one pedestrian, and almost the life of another.  Ms. Martinez, who suffered a shattered leg, stated that Mr. Ruiz pushed her out of the way to save her life.  Mr. Ruiz, according to the same report, died from massive internal and head injuries.

Id.  The governor noted that petitioner had been a model prisoner – he had stayed discipline-free, upgraded educationally and vocationally, and participated in self-help programs. Id at 1-2.  But in his judgment, the "atrocious" nature of the crime in view of the "significance and similarities" of petitioner's criminal history, "outweigh[ed] any positive factors tending to support [petitioner's] release from prison, especially considering he has served only slightly more than 14 years of his 15-to-life sentence."  Id at 2.

The state superior court affirmed the decision of the governor.  The court found that "the record contains 'some evidence' to support the Governor's finding that petitioner is unsuitable for parole."  In re Sanchez, No BH003366, slip op at 1 (Cal Super Ct July 19, 2005) (citations omitted) (Resp't Ex F).  It explained that although the record reflects that petitioner has been a model inmate since his incarceration, his "history of drinking and driving is 'some evidence' that he poses an unreasonable risk of danger to the community."  Id at 2.

The California Court of Appeal similarly affirmed the decision of the governor and concluded that "[t]here is 'some evidence' to support the findings of the Governor."  In re Sanchez, No B 185082, slip op at 1 (Cal Ct App Feb 115, 2006) (citation omitted)  (Resp't Ex G). The Supreme Court of California denied review.

6

The state courts' rejection of petitioner's due process claim was not contrary to, or involved an unreasonable application of, the <u>Hill</u> standard, or was based on an unreasonable determination of the facts.  See 28 USC § 2254(d). The governor's February 8, 2005 decision to reverse the parole granted him by the BPT is supported by some evidence in the record.  See, eg, <u>Irons</u>, 505 F3d at 852-53 (upholding denial of parole based solely on gravity of offense); <u>Sass</u>, 461 F3d at 1129 (upholding denial of parole based solely on gravity of offense and conduct prior to imprisonment); <u>Biggs</u>, 334 F3d at 916 (same).  The inquiry under <u>Hill</u> is simply "whether there is <u>any</u> evidence in the record that could support the conclusion reached by the [governor]." <u>Hill</u>, 474 US at 455-56 (emphasis added).  There is – the facts surrounding the murder reasonably suggest a callous disregard for human suffering; petitioner has a criminal history which includes three prior convictions for drunk driving; and petitioner failed to profit from society's previous attempts to correct his criminal behavior and alcoholism, including probation, suspension of his driver's license and mandatory participation in an alcohol abuse program.  Cf Cal Code Regs tit 15, § 2402(c) & (d) (listing circumstances tending to show unsuitability for parole and circumstances tending to show suitability).  Although there were factors tending to support suitability, it is not up to this court to "reweigh the evidence." <u>Powell v Gomez</u>, 33 F3d 39, 42 (9th Cir 1994).  The governor's legitimate concern with petitioner's history of criminal drunk driving and recidivism constitutes some evidence under <u>Hill</u> in support of the governor's determination that petitioner posed an unreasonable risk of danger to society if released from prison.  See <u>Hill</u>, 474 US at 455-56.

Petitioner argues that the governor's reliance on unchanging factors such as his commitment offense and pre-commitment criminal history in determining

that he is not suitable for parole conflicts with the Ninth Circuit's decisions in Biggs and Irons. In Biggs, the Ninth Circuit upheld the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, but cautioned that, over time, denying a prisoner parole strictly because of the nature of his offense and his prior conduct "would raise serious questions involving his liberty interest in parole . . . and could result in a due process violation." Biggs, 334 F3d at 916-17. In Irons, the Ninth Circuit again upheld the denial of a parole release date based solely on the nature of the crime, but reiterated its "hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes." Irons, 505 F3d at 854. This is not such a case.

The record shows that the governor's February 8, 2005 decision was only the second time that petitioner was denied parole. As of that date, neither the BPT nor the governor had continually relied solely on petitioner's commitment offense and pre-commitment history to deny him parole. Nor had petitioner's minimum term of 15 years yet expired. See Irons, 505 F3d at 853-54 (noting that Ninth Circuit has upheld denial of parole based solely on commitment offense and/or pre-commitment conduct where prisoners have not yet served minimum number of years required by their sentence). The governor in fact justified his decision in part on the ground that petitioner had "served only slightly more than 14 years of his 15-to-life sentence." Feb 8, 2005 Governor's Decision at 2.

/

IV

For the reasons set forth above, the petition for a writ of habeas corpus is

8

1     DENIED.

2          The clerk shall enter judgment in favor of respondent and close the file.

3          SO ORDERED.

4                                        _____
                                         VAUGHN R WALKER
5                                        United States District Chief Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28    G:\PRO-SE\VRW\HC.06\Sanchez, Jorge.denial.wpd              9